UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ANTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| VINCENT GUARINI, WARDEN, in | § | |
| his official and individual capacity; | § | |
| County of Lancaster Prison | § | |
| 625 E. King St. | § | |
| Lancaster, PA  17602-3199 | § | CIVIL ACTION NO. |
| | § | |
| EDWARD KLINOVSKI, MAJOR, in | § | |
| his official and individual capacity; | § | |
| County of Lancaster Prison | § | |
| 625 E. King St. | § | |
| Lancaster, PA  17602-3199 | § | |
| | § | |
| CORRECTIONS OFFICER JAMES | § | |
| ZIMMERMAN, in his official and | § | |
| individual capacity; | § | |
| County of Lancaster Prison | § | |
| 625 E. King St. | § | JURY TRIAL DEMANDED |
| Lancaster, PA  17602-3199 | § | |
| | § | |
| CORRECTIONS OFFICER SEAN | § | |
| HETRICK, in his official and | § | |
| individual capacity; | § | |
| County of Lancaster Prison | § | |
| 625 E. King St. | § | |
| Lancaster, PA  17602-3199 | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff, Charles Anton, through his attorneys, brings this complaint against Lancaster County Prison, its employees and agents, alleging the following:

## I.    Introduction

1)    Lancaster County Prison has implemented policies and acquiesced to a culture of violence in its prison that led to the brutal beating of Plaintiff.    Lancaster County Prison has a history of allowing prisoner abuse and has fostered a culture of ongoing unconstitutional abuse.    *See e.g. Eichelman v. Lancaster County*, 510 F. Supp. 2d 377 (E.D.Pa. 2007) (Prison officials encouraged and allowed inmates to beat another inmate) and *Nieves v. Lancaster County*, 04-cv-4452 (E.D.Pa.)    It is a fundamental principle in an ordered society that prisons have a duty to humanly treat those under their custody and control.    From basic human rights to specific applications of the Fourth Amendment and Due Process liberty interests, human dignity and constitutional rights are violated when any government institution participates in senseless abuse.

2)    The actions of Lancaster County Prison, Warden Guarini, Major Klinovski, and its corrections officers not only violate constitutional principles, but also violate the United Nations Convention Against Torture, of which the United States is a signatory. The Convention defines torture, in part, as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as...punishing him for an act he...has committed or is suspected of having committed." As alleged in at

least four prior and current lawsuits against the prison—*Eichelman* v. *Lancaster County*, *Nieves* v. *Lancaster County*, *Barbacano* v. *Guarini*, 08-cv-5098, and *Laughman* v. *Guarini*, 09-cv-2252—the Lancaster County Prison has a policy and practice of inflicting severe pain and suffering on the inmates. In response to minor infractions by inmates, or even to disobediences fabricated by prison staff, corrections officers use violent and excessive force, even when no security risk is presented by inmates, to punish these minor disobediences, thereby violating the Convention.

3]     Moreover, Warden Guarini and Major Klinovski also violate the Convention Against Torture, because the severe pain and suffering inflicted on the inmates is done with their knowledge and consent. The Convention further defines torture as severe pain and suffering inflicted "with the consent or acquiescence of a public official or other person acting in an official capacity." Warden Guarini and Major Klinovski, in their official capacities, acquiesce to the brutal abuse of prisoners at the hands of corrections officers because they refuse to take any actions to prevent the infliction of severe pain and suffering, even though they have had knowledge of the abuse.

4]     The purpose of a just prison system should never be to degrade or cruelly and inhumanely punish criminals. Any prison that condones and allows prisoners to be abused is failing its duty to society, violating customary international law, and decreasing the

chances of rehabilitation.  When prisoners experience such lawless treatment from the hands of the government, it is unlikely that they will be inspired to obey the law when they are released.  This action, therefore seeks to change the culture of abuse at Lancaster County Prison through 1) a declaratory judgment that Plaintiff's constitutional rights were violated, 2) nominal and compensatory damages; 3) punitive damages against defendants in their individual capacities; 4) court referral to the United States Department of Justice for investigation and, 5) attorneys' fees.

## II.   JURISDICTION

5)     The court has jurisdiction of Plaintiff's Fourth Amendment claims pursuant to 28 U.S.C. §1331, § 1343 and 42 U.S.C. § 1983; Plaintiff's declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.; and, Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III.  VENUE

6)     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' actions arose within the boundaries of the United States District Court for the Eastern District of Pennsylvania.

## IV.    THE PARTIES

### A.    Plaintiff

7]    Charles Anton is an adult citizen and resident of Pennsylvania residing in Warwick Township, Lancaster County, Pennsylvania.

### B.    Defendants

8]    Vincent Guarini is the Warden of Lancaster County Prison, responsible for safe-keeping all inmates incarcerated in Lancaster County Prison.    Defendant Guarini has a duty to provide for adequate training and supervision of prison staff and make sure constitutional policies are implemented to protect prisoners from abuse and that all policies and procedures are followed.  Defendant Guarini at all times relevant to this complaint acted under the color of state law and within the scope of his employment. Defendant Guarini is being sued both individually and in his official capacity as an officer, agent, and employee of Lancaster County.

9]    Edward Klinovski is the Major at Lancaster County Prison, responsible for prison security and all internal investigations, including use-of-force incidents and events involving injuries to inmates incarcerated in Lancaster County Prison.    Defendant Klinovski has a duty to provide adequate supervision of prison staff, and to thoroughly investigate and discipline corrections officers who use excessive and inappropriate force.    Defendant

Klinovski at all times relevant to this complaint acted under the color of state law and within the scope of his employment. Defendant Klinovski is being sued both individually and in his official capacity as an officer, agent, and employee of Lancaster County.

10) Correctional Officer Zimmerman is an employee of Defendant Lancaster County, serving as a correctional officer at the Lancaster County Prison. At all times material Defendant Zimmerman acted under color of state law and within the scope of his employment. Defendant Zimmerman is being sued individually and in his official capacity as an officer, agent, and employee of Lancaster County.

11) Correctional Officer Hetrick is an employee of Defendant Lancaster County, serving as a correctional officer at the Lancaster County Prison. At all times material, Defendant Hetrick acted under color of state law and within the scope of his employment. Defendant Hetrick is being sued individually and in his official capacity as an officer, agent, and employee of Lancaster County.

12) At all times alleged herein, defendants were acting under color of state law.

## V.    STATEMENT OF RELEVANT FACTS

13) For years, the Lancaster County Prison has fostered an environment and culture of abuse to include but not limited to the following:

a)   Guards routinely beat and abuse prisoners without control, accountability or discipline from supervisors.

b)   Guards routinely slam inmates' heads into walls, doors, desks, and concrete pillars.

c)   Guards beat up mentally infirm prisoners and prisoners in restraint systems for medical reasons.

d)   Guards target specific prisoners for abuse because of physical characteristics, including their weight.

e)   Guards routinely subject inmates to frequent and unconstitutional strip searches, merely to humiliate and embarrass the inmates.

f)   Guards organize "gladiator games," in which guards choose a prisoner to fight one of the other guards.

g)   Guards who speak up against such abuse are marginalized into silence.

h)   Guards who speak up against such abuse are even subjected to physical abuse themselves at the hands of fellow guards.

14)   On July 3, 2007, Mr. Anton, a long time resident of the county with significant ties to the community, was arrested by Detective Zimmerman of the Warwick Township police on a charge of identity theft and was taken to Lancaster County Prison because he could not post the $40,000.00 bail imposed upon him,.

15] Warwick Township police Detective Zimmerman is the brother of Defendant James Zimmerman.

16] Upon his arrival at the prison, Mr. Anton was processed in the intake area, whereupon he explained his mental health issues, his disabilities, and identified all his prescribed medications.

17] After answering questions, and at the direction of the supervising corrections officer, Defendant Zimmerman, Mr. Anton willingly moved to a prison cell for a strip search.

18] Neither Zimmerman nor any other defendant had any belief that Mr. Anton, as a pretrial detainee, had any contraband whatsoever.

19] Mr. Anton proceeded to undress, starting with his shoes as directed by Defendant Zimmerman.

20] As Defendant Zimmerman inspected one of Mr. Anton's shoes, Mr. Anton reached for a shoe on top of a "property box" which was in the cell.

21] Defendant Zimmerman yelled loudly at Mr. Anton to stop.

22] Mr. Anton willingly complied and continued to undress, handing Defendant Zimmerman his shoes upon request.

23] When Mr. Anton again reached for his property box, Defendant Zimmerman stepped forward, grabbed Mr. Anton's head and slammed Mr. Anton against the wall face-first.

24] Mr. Anton hit the wall so hard that his face immediately began bleeding, smearing blood on the wall.

25] Mr. Anton exclaimed, "What the f---!" and began calling loudly to alert people in hopes of focusing attention on his treatment.

26] Two or three other guards came into the cell, but instead of intervening, the guards participated in the abuse of Mr. Anton.

27] The additional guards restrained Mr. Anton, while Defendant Zimmerman punched Mr. Anton on the right side of his face.

28] The additional guards then stripped Mr. Anton naked, cuffed his hands behind his back, and proceeded to beat him and to slam his head, shoulders, and chest down onto the solid bunk.

29] After this abuse, before leaving, Defendant Zimmerman sadistically twisted Mr. Anton's big toe causing it to fracture; Defendant Zimmerman then twisted it again simply to inflict more pain.

30] All the corrections officers departed, leaving Mr. Anton handcuffed and naked in the cell for five to ten minutes.

31] After victimizing Mr. Anton with this abuse, Defendant Zimmerman wrote up a disciplinary report on Mr. Anton causing him to be sent to the restrictive housing unit ("the hole").

32] When an unknown corrections officer presented a regular jumpsuit for Mr. Anton, Defendant Zimmerman announced that Anton was going to "the hole," the C-2 wing of the prison.

33] An unknown corrections officer photographed Mr. Anton after he was dressed, documenting the severe injuries to Mr. Anton's face.

34) Due to Defendant Zimmerman's abuse, Mr. Anton suffered fractures in his right big toe, resulting in pain and suffering.

35) This unknown guard then escorted Mr. Anton to "the hole."

36) At some point during this transfer, this guard transferred control of Anton to Defendant Hetrick.

37) As they approached C-2, Defendant Hetrick, who was accompanied by two other unknown corrections officers, gave a vague instruction to Mr. Anton to put his property box down.

38) Because Anton was unsure of the direction, he stopped walking, whereupon Defendant Hetrick punched Mr. Anton.

39) Defendant Hetrick and the two other corrections officers proceeded to push and punch Mr. Anton the rest of the way to his cell and inside the cell as well.

40) Mr. Anton's ears were ringing upon his arrival at his cell in C-2-A.

41) Even though Mr. Anton informed the prison officials about his schedule for his medications, Cymbalta, Xanax and Adderall, he was not given any Cymbalta for six days and was never given any Xanax or Adderall.

42) Mr. Anton spent 45 days in "the hole" as a result of the abuse by Defendants Zimmerman and Hetrick.

43) Mr. Anton was finally released from Lancaster County Prison on August 28, 2007, after his preliminary hearing when he was able to make arrangements for bail.

## VI.    CAUSES OF ACTION

<u>Count I</u>
### Deliberate Indifference To Plaintiff's Fourth Amendment Rights
### [42 U.S.C. § 1983] – Beating prisoner and inflicting wanton and
### unnecessary pain.

44)    Plaintiff incorporates and adopts by reference each and every
allegation in the preceding paragraphs of this Complaint.

45)    Individuals awaiting trial do not forfeit their rights to be treated
humanely just because they are detained.  The Fourth Amendment
specifically    protects    detainees    from    cruel    and    unusual
punishment.

46)    Defendant    Correctional    Officers    violated    Mr.    Anton's    Fourth
Amendment Rights that are designed to uphold the dignity of man,
which was violated by punitive treatment that inflicted "wanton
and unnecessary" pain.    *Hope v. Pelzer*, 536 U.S. 730, 737-38
(2002).

47)    The beating described above was both: "(1) a sufficiently serious
constitutional deprivation; and (2) deliberate indifference by the
prison official-defendants."    *Beers-Capitol v. Whetzel*, 256 F.3d 120,
130 (3rd Cir. 2001).

48)    Being beaten for merely failing to immediately comply with
directives, when Mr. Anton posed no security threat, is the type of
wanton and unnecessary pain that constitutes a serious
deprivation of Mr. Anton's rights.

49] Defendant Correctional Officers were state actors that purposely beat Mr. Anton, passing the standard of mere deliberate indifference, inflicting severe physical and mental pain and suffering on Mr. Anton.

50] It was "'sufficiently clear that a reasonable official would understand that what he is doing violates'" the right to be free from excessive force and cruel and unusual punishment so the Defendant Officers are not entitled to qualified immunity under § 1983 because a beating is a clear violation of Mr. Anton's Fourth Amendment rights.

51] The Lancaster County Prison maintains a pattern and practice of unjustified, unreasonable and illegal force that inflicts severe pain and suffering on its inmates.

WHEREFORE, plaintiff demands judgment against defendants as set forth in his prayer for relief.

**Count II**
**Policy, Custom, and Practice (42 U.S.C. § 1983) – Having Policies, Customs, and Practices That Lead to Prisoner Abuse**

52] Plaintiff incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint.

53] The Lancaster County Prison maintains a pattern and practice of unjustified, unreasonable and illegal force that inflicts severe physical and mental pain and suffering on its inmates.

54)     A number of corrections officers at Lancaster County Prison engage
        in unprovoked or verbally provoked malicious and sadistic abuse
        of prisoners.    The Fourth Amendment allows that corrections
        officers may use the degree of force necessary to a good faith effort
        to restore discipline.  However, a verbal statement by a prisoner is
        never grounds for physical force by a guard and evidences a lack of
        adequate training.  Likewise, prisoner refusal to eat prison food is
        not constitutionally permissible grounds for the use of physical
        force upon a prisoner.  Despite these well and long-established
        principles, inmates are routinely hit, tasered and beaten for verbal
        comments and refusal to consume food.

55)     Lancaster County Prison maintains a policy, custom and practice
        of guard abuse of prisoners.  This policy of abuse is an actionable
        'custom' as it is so long-standing and well-settled that it can be
        said to virtually constitute law.

56)     The custom or practice of prisoner beatings "may be established by
        proof of knowledge or acquiescence." *Eichleman*, 510 F. Supp. 2d
        at 395.

57)     Through policies and lack of oversight the County, the Warden,
        and the Major acquiesced to the culture of violence inside
        Lancaster County Prison include, *inter alia*:

a) Having a custom, policy, and practice of failing to properly train and supervise correctional officers, allowing officers to use wanton and unnecessary force on prisoners.

b) Failure to discipline correction officers who abuse prisoners.

c) Failure to have any system by which correction officers who abuse guards are identified and held accountable for their conduct.

d) Having a custom, policy, and practice of downplaying the degree of force used by correctional officers against prisoners (*See Eichelman*, where prison medical staff briefly treated Eichelman who after his release was actually hospitalized from injuries received while in prison. *Eichelman*, 510 F. Supp. 2d at 385.)

58) It is believed and therefore averred that a group of corrections officers, including Defendants, have made abusing inmates "a well-settled practice" at Lancaster County Prison, creating a custom and policy to which the County, its policymaker Warden Guarini, and its enforcer Major Klinovski, acquiesced. *Eichelman*, 510 F. Supp. 2d at 397.

59) Warden Guarini is also liable as a deliberately indifferent supervisor under the *Eichelman* and *Beers-Capitol* test: "[A] supervisor [is] liable for his deficient policies if...: (1) the existing policy or practice created an unreasonable risk of the constitutional injury he sustained; (2) the supervisor was aware of the unreasonable risk that was created (or that it was so great and

so obvious); (3) he was indifferent to that risk; and (4) the injury resulted from the policy or practice. *Eichelman,* 510 F. Supp. 2d at 397.

60] The custom of prison guards using wanton and unnecessary force on prisoners is a clear risk of constitutional injury, the Warden should have been aware of the numerous incidents and reports, the Warden did not take action to address this risk, and Mr. Anton was injured as a result of the ongoing practice of wanton and unnecessary violence, which inflicts severe physical and mental pain, perpetrated by the guards.

61] Major Klinovski is also liable as a deliberately indifferent supervisor under the *Eichelman* and *Beers-Capitol* test: "[A] supervisor [is] liable for his deficient policies if...: (1) the existing policy or practice created an unreasonable risk of the constitutional injury he sustained; (2) the supervisor was aware of the unreasonable risk that was created (or that it was so great and so obvious); (3) he was indifferent to that risk; and (4) the injury resulted from the policy or practice. *Eichelman,* 510 F. Supp. 2d at 397.

62] The custom of prison guards using wanton and unnecessary force on prisoners is a clear risk of constitutional injury.  As the officer responsible for security, and for internal investigations in incidents involving injuries to prisoners, the Major should have been aware

of the numerous incidents and reports, and he should have taken action to address this constitutional risk. Mr. Anton was injured as a result of the ongoing practice of wanton and unnecessary violence perpetrated by the guards. The violence perpetuated by Major Klinovski's refusal to thoroughly investigate use-of-force incidents and discipline corrections officers for violating inmates' constitutional rights inflicts severe physical and mental pain and suffering.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in his prayer for relief.

## COUNT III
### Intentional Infliction of Emotional Distress

63) Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this Complaint and incorporates them herein.

64) The conduct of defendant was extreme and outrageous.

65) The conduct described in the previous paragraphs was intentional or reckless.

66) The conduct described in the previous paragraph caused severe emotional distress to Mr. Anton for which he has sought counseling.

WHEREFORE, plaintiff prays for relief against Defendants as hereinafter set forth in the prayer for relief.

## VII.   RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

1.   A Declaration that Defendants' conduct was unconstitutional and against the laws of human dignity and the Fourth Amendment;

2.   Award nominal damages and compensatory damages from Defendants for their unlawful conduct;

3.   Award punitive damages against defendants in their individual capacities for the outrageous nature of their abuse and for the unconstitutional custom, policy and practice of abuse with the Lancaster County Prison;

4.   Refer this matter to the United States Department of Justice for investigation;

5.   Pursuant to 42 U.S.C. § 1988, award to Plaintiff reasonable attorney fees and costs;

6.   An award to Plaintiff of such other and further relief as is just and proper.

Respectfully submitted,

CLYMER & MUSSER, P.C.

DAVID R. DYE
Pennsylvania Bar No. 88665
LEONARD G. BROWN, III
Pennsylvania Bar No. 83207
408 West Chestnut Street
Lancaster, PA 17603
(717) 299-7101
(717) 299-5115—facsimile
Dated:  June 26, 2009        ATTORNEYS FOR PLAINTIFF

## VERIFICATION

I, Charles Anton, verify that I am familiar with the facts contained in the within the Complaint and that the said facts and statements made therein are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are subject to the penalties of 18 Pa.C.S. 4904 relating to unsworn falsification to authorities.

Dated: 6 / 26 / 2009

Charles Anton