# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ANTON | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-2899 |
| | : | |
| VINCENT GUARINI, et al | : | |
| Defendants | : | |

## M E M O R A N D U M

**Stengel, J.**                                                                                    **December 22, 2010**

      Charles Anton is a former inmate of the Lancaster County Prison. Mr. Anton claims that, while undergoing a strip search as part of intake procedures at the Prison, Corrections Officer James Zimmerman punched him, threw him against a wall, and intentionally broke one of his toes. He claims another Corrections Officer, Sean Hetrick, beat him after intake procedures were completed. Mr. Anton filed this Section 1983 action again Warden Vincent Guarini, Major Edward Klinovski, and Officers Zimmerman and Hetrick. He then stipulated to the dismissal of all claims against Mr. Guarini and Mr. Klinovski. The remaining defendants have filed a motion for summary judgment. For the reasons set forth below, I will grant the motion in part and deny it in part.

## I. BACKGROUND[1]

On July 3, 2007, Mr. Anton was arrested at his home for identity theft. Def.'s SUF ¶ 5. After his arrest he appeared before a Magistrate in Ephrata, Pennsylvania, who set his bail at $40,000. Deposition of Charles Anton, Jan. 14, 2010, 62:1–3. From there, he was taken directly to Lancaster County Prison. Def.'s SUF ¶ 6; Anton Dep. 62:7–11. After he arrived at the Prison, he underwent a routine strip search, and it is during the strip search that Mr. Anton maintains Corrections Officer Zimmerman, who he first encountered at the prison, threw him against a wall and then intentionally broke his toe. The defendants were not deposed during discovery; therefore the only version of events available for the court's review is that provided by Mr. Anton, who testified to the following during his deposition: while he was in the process of removing his clothes for the search, he reached for and grabbed a pair of shoes on top of a property box in the cell where he and Officer Zimmerman were located. Anton Dep., 64:4–18. Zimmerman told him to put down the shoes, and Anton obeyed. Id. at 65:12–16. Sometime within the next minute, Anton again reached for the shoes, but did not grab them. Id. at 66:1–11. Zimmerman again told him to stop, and Mr. Anton responded by saying "what." Id. at

---

[1] All facts are taken from the Defendants' Statement of Undisputed Material Facts (Incorrectly labeled 'Defendants' Lancaster County Prison and Troy Waltz's Statement of Undisputed Material Facts') and the exhibits filed by the parties to this action. The Policies and Procedures of this court clearly require that "[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's] statement . . . as to which it is contended there exists a genuine issue to be tried." The plaintiff has not filed any such response to the Defendants' Statement.

66:1–67:16. Zimmerman then turned Anton's body so that Anton went from facing Zimmerman to facing the wall of the cell. After turning Anton around, Zimmerman slammed Anton's face into the wall, causing it to bleed. Id. at 67:16–70:13–18. Anton then began yelling "what the fuck" and two or three other corrections officers came into the cell. Id. at 77:8–13; 81:4–7.

After the other officers arrived in the cell, they held Mr. Anton's arms behind his back so that he could not move them, and continued the strip search. Anton Dep. at 78:7–79:11. At one point while he was being held, Zimmerman "punched [him] in the face." Id. at 78:10–11. After they finished taking Anton's clothes off, they picked him up and slammed him onto a metal cot. Id. at 81:8–12. After he had been pushed onto the cot, and while other corrections officers were holding Anton down and pressed to the cot, Zimmerman grabbed Anton's right big toe and twisted it. Id. at 83:4–23; 84:2–12. The first time Zimmerman twisted Anton's toe, he broke it and Anton felt "excruciating pain." Id. at 85:14. Anton's body went limp from the pain, and Zimmerman then twisted the toe a second time, causing Anton to scream. Id. at 85:16–23. He was then left in the cell for a few minutes before being taken by other corrections officers to another section of the prison, the C-2 Annex. Id. at 87:8–13.

After Mr. Anton reached the C-2 Annex, he was handed over to Corrections Officer Hetrick, who walked in front of Anton, leading him to a shower room. Id. at 91:13–22. Anton put the box of belongings he was carrying onto the floor, and Hetrick

then reached for Anton's head, hitting the back of it.  Id. at 91:24–92:13.

According to the Prison's records, Mr. Anton never sought or received medical treatment for his face or his toe.  Def.'s SUF ¶¶ 9, 10.  Anton claims that, because nurses refused him when he made verbal requests for treatment, he did not bother to make written requests.  Anton Dep. 88:4–21; 132:21–133:12.  He claims his toe remained swollen throughout the time he was at the Prison and after he was released on August 27, 2007.  After he was released from prison, Mr. Anton sought treatment for continuing pain in his toe, eventually having surgery on it on February 27, 2008.  Id. at 136:8–17.  Medical records he submitted indicate that he was diagnosed as having a fracture in his right big toe, and that during surgery, fracture fragments were removed.  Anton Ex. C.

Mr. Anton's complaint initially consisted of three counts: Count I alleges "Deliberate Indifference to Plaintiff's Fourth Amendment Rights [42 U.S.C. § 1983] - Beating prisoner and inflicting wanton and unnecessary pain."  Count II is essentially a Monell claim, alleging the existence of policies and procedures allowing prison guard abuse in violation of Section 1983; and Count III alleges intentional infliction of emotional distress.  Mr. Anton has stipulated to the dismissal of Count II and to the dismissal of Warden Guarini and Major Klinovski as defendants.  Therefore, all that remains of Mr. Anton's complaint are the excessive force and intentional infliction of emotional distress claims against Corrections Officers James Zimmerman and Sean Hetrick.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it could affect the outcome of the case under the governing law. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing "based on the affidavits or by depositions and admissions on file" that is "sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992).

## III.  DISCUSSION

### A.  Excessive Force Claims

The defendants seek dismissal of Mr. Anton's excessive force claim on two general grounds: first, they claim insufficient evidence exists to show either that excessive force was used on Mr. Anton or that he suffered anything more than de minimus injury.  Second, they argue that they are entitled to qualified immunity.

"Section 1983 . . . does not create substantive rights, but provides a remedy for the violation of rights created by federal law." Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  It imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir.2000).

### 1.  The Plaintiff's Complaint Fails to State a Proper Basis for a Section 1983 Claim

A plaintiff asserting a cause of action under Section 1983 must specify the constitutional amendment he claims the defendant violated.  The Supreme Court's instructions with respect to excessive force claims are clear:

> We reject [the] notion that all excessive force claims brought under § 1983 are governed by a single generic standard.  As we have said many times, § 1983 is not itself a source of substantive rights, but merely

provides a method for vindicating federal rights elsewhere conferred. In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . . The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard.

Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989). In other words, a plaintiff's claim that a defendant used excessive force in violation of § 1983 is insufficient — a plaintiff must specify what constitutional amendment or federal law the defendant violated by using excessive force. Mr. Anton asserts a § 1983 claim premised on a violation of his Fourth Amendment rights. See Compl., Count I.[2]

An excessive force claim that arises from the use of force during a stop or arrest is governed by the Fourth Amendment.[3] Graham, 490 U.S. at 394; United States v. Johnstone, 107 F.3d 200, 204 (3d Cir. 1997). The appropriate standard to apply to a

---

[2] Specifically, Mr. Anton claims prison officials are liable for "deliberate indifference to [his] Fourth amendment Rights." The concept of deliberate indifference was first articulated by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976), in the context of an Eighth Amendment conditions of confinement claim based on a prison's failure to provide adequate medical care for an incarcerated prisoner. Deliberate indifference to Fourth Amendment rights, therefore, is a concept with no basis, as I can find it, in relevant case law. Therefore, I will construe Mr. Anton's claim as stating a claim for use of excessive force in violation of the Fourth Amendment.

[3] The Fourth Amendment provides: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. AMEND. IV, US CONST.

Fourth Amendment excessive force claim is whether an officer's actions are objectively reasonable in light of the facts and circumstances surrounding them, without regard to the officer's underlying intent or motivation. Johnstone, 107 F.3d at 204. An excessive force claim brought by a convicted prisoner serving a sentence of incarceration is governed by the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment.[4] Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078 (1986). In other words, a plaintiff may only bring an Eighth Amendment claim where he has been convicted and is in prison to serve a sentence. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). The proper standard for Eighth Amendment excessive force claims is whether the infliction of pain was unnecessary and wanton. See Whitley, 475 U.S. at 319; Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995 (1992).

A § 1983 plaintiff who is subjected to excessive force after his arrest but before his conviction (if there is one) is a pre-trial detainee — "a person lawfully committed to pretrial detention [who] has not been adjudged guilty of any crime." Bell v. Wolfish, 441 U.S. 520, 536, 99 S.Ct. 1861 (1979). Pre-trial detainees rely on neither the Fourth Amendment nor the Eighth Amendment; instead, they are protected under the Due Process Clause of the Fourteenth Amendment.[5] Id.; Hill v. Algor, 85 F. Supp. 2d 391,

---

[4] The Eighth Amendment provides: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. AMEND. VIII, US CONST.

[5] This Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" AMEND. XIV, US CONST.

402 (D.N.J. 2000); Bieros v. Nicola, 860 F.Supp. 226, 230 (E.D.Pa. 1994) ("It is clear that courts apply the Due Process Clause of the Fourteenth Amendment to protect pretrial detainees from excessive force." (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990))). While there has been some debate about where an individual's seizure ends and his pretrial detention begins, a review of relevant caselaw reveals that Mr. Anton was no longer subject to the protections of the Fourth Amendment at the time he was allegedly assaulted while at Lancaster County Prison.

"[T]he limits of Fourth Amendment protection relate to the boundary between arrest and pretrial detention. At most, there may be some circumstances during pre-trial detention that implicate Fourth Amendment rights; however, we refer to the Fourth Amendment as applying to those actions which occur between arrest and pre-trial detention." Torres v. McLaughlin, 163 F.3d 169, 174 (3d Cir. 1998). Torres concerned a potential Fourth Amendment claim by a person incarcerated after his conviction and is therefore largely inapplicable here; however, the Third Circuit has addressed in detail how far Fourth Amendment protections extend to pre-conviction detainees. In Johnstone, the court reviewed the conviction of a municipal police officer for various civil rights offenses. 107 F.3d at 204. The officer argued that the District Court's instruction that the jury evaluate certain claims against him under the Fourth Amendment's objective reasonableness standard was erroneous. Id. Specifically, the officer contended that because the victims were already handcuffed when they were assaulted, the assaults took

place after, not during, the arrests, rendering the Fourth Amendment inapplicable. The court recognized that Graham provides little guidance on where an arrest stops and pretrial detention begins. Id.[6] However, it found that the lower court's decision to instruct the jury on the Fourth Amendment standard was proper because, in both the case before it and in Graham, the victims complaining of excessive force in violation of the Fourth Amendment were still under the control of arresting officers during the time immediately following their arrests.

In this case, Mr. Anton alleges that he was assaulted after his arrest, after he appeared before a Magistrate, and after he was taken to Lancaster County Prison because he did not make bail. The fact that the conduct he claims forms the basis for a constitutional violation occurred at the hands of Corrections Officers who were not involved in his arrest and after his appearance before a Magistrate renders any § 1983 claim based on the Fourth Amendment baseless. See Hill, 85 F. Supp. 2d at 403 ("[T]his court declines to extend pretrial detention beyond the circumstances in Bell, concluding that such detention does not begin until an arrestee is at least formally charged and his release or continued detainment is determined."); Bodnar v. Wagner, No. 07-2038, 2010 WL 56097 at *7 (M.D.Pa. Jan. 5, 2010) ("Given the immediate proximity to the arrest, the fact that the injuries . . . were allegedly caused during the arrest, the fact that the same

---

[6] The Graham court admitted: "Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today." 490 U.S. at 395 n. 10.

two officers continued to control Bodnar, and the fact that [he] was arrested without a warrant and had not yet been arraigned before a judicial officer, I find that Plaintiffs' claims should be analyzed as being before pre-trial detention began").

> 2. **The Defendants Have Not Identified This Deficiency in the Plaintiff's Complaint, and Both Parties Assume Eighth Amendment Standards Apply to Plaintiff's Claim**

Mr. Anton's complaint is invalid on its face, because it asserts a violation of the Fourth Amendment, which afforded no protection to Mr. Anton at the time he allegedly suffered abuse while at the Prison. Rather, as a pre-trial detainee, Mr. Anton was protected by the Due Process clause of the Fourteenth Amendment. The defendants have not identified this as a ground for summary judgment, nor did they seek dismissal under Federal Rule of Civil Procedure 12(b)(6). They argue instead that the standard applicable to Eighth Amendment § 1983 claims applies to Mr. Anton. See Def.'s Mem. Mr. Anton's attorney also cites Eighth Amendment cases repeatedly, failing to notice that the Eighth Amendment is nowhere identified in Mr. Anton's complaint as a basis for relief.

This is not to say that the protections of the Eighth Amendment are not relevant to Mr. Anton's claims. Courts have held that pre-trial detainees asserting excessive force claims under the Due Process Clause of the Fourteenth Amendment are entitled, at the least, to the protections of the Eighth Amendment. The Third Circuit has cited with approval the reasoning of the Fifth Circuit in <u>Valencia v. Wiggins</u>, 981 F.2d 1440 (5th Cir. 1993):

> [W]e conclude that excessive use of force claims by pretrial detainees should not be analyzed under Bell's conditions of confinement standard. Instead, we are guided by the standard announced in Whitley and Hudson. While these cases specifically addressed claims of excessive use of force brought by convicted prisoners, it is impractical to draw a line between convicted prisoners and pretrial detainees for the purpose of maintaining jail security. Moreover, the Court indicated in Hudson that many of its concerns in Whitley were not limited to Eighth Amendment claims but 'arise whenever guards use force to keep order.'

Fuentes v. Wagner, 206 F.3d 335, 347 (3d Cir. 2000) (quoting Valencia, 981 F.2d at 1446).[7] In other words, the Due Process protections afforded to pre-trial detainees are at least coextensive with the Eighth Amendment. Because the plaintiff makes absolutely no argument that he is entitled to greater protections than those in the Eighth Amendment, I will assume that he waives this argument.

I am therefore confronted with a complaint that on its face does not state a § 1983 claim, because the basis of the § 1983 claim stated is the Fourth Amendment. It is clear that Mr. Anton, as a pre-trial detainee, cannot rely on the Fourth Amendment. However, both parties cite Eighth Amendment standards in arguing whether Mr. Anton's claim

---

[7] In Fuentes, the court stressed that the Eighth Amendment standard was appropriate for use in cases where prison officials use force in the context of a prison disturbance. The facts alleged by Mr. Anton are distinct from those in Fuentes, where corrections officers appeared in the plaintiff's cell after he began kicking his own cell door and yelling for corrections officers. However, one of the cases cited by the Fuentes court, Hudson, explicitly confirms that the "unnecessary and wanton" standard applies to all types of prison disturbances, whether they are riots or lesser disruptions, since the use of force by prison officials in either context will implicate the principle that "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." 503 U.S. at 6. Therefore, I am satisfied that the principles articulated in Fuentes apply in this case.

should survive summary judgment. Because it is settled that Eighth Amendment standards apply to the excessive force claims of a pretrial detainee asserted under the Due Process clause, the parties do cite the proper legal authority. According to Rule 8, "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8(e). Both parties argue that Eighth Amendment standards apply to Mr. Anton's excessive force claim, and the defendants have thus far failed to seek dismissal on the ground that Mr. Anton's § 1983 claim asserts a violation of the wrong constitutional amendment. Therefore, I will consider whether plaintiff's claim, which should have been styled as a § 1983 claim based on violation of the Fourteenth Amendment's Due Process Clause, withstands summary judgment under the applicable Eighth Amendment standard.

      **3.**      **Assuming that Plaintiff Had Stated The Proper Cause of Action and Accepting the Parties' Contention that the Eighth Amendment Standard Applies, A Genuine Issue of Fact Exists**

To be sure, the Due Process Clause of the Fourteenth Amendment affords pre-trial detainees the same protection against the use of excessive force convicted prisoners receive under the Eighth Amendment. Under the Eighth Amendment, "not every governmental action affecting the interests or well-being of a prisoner is subject to . . . scrutiny." Whitley, 475 U.S. at 319. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). In an Eighth Amendment excessive force claim, the key inquiry is "whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (citing Hudson, 503 U.S. 1 at 7). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Id. (citing Whitely, 475 U.S. at 321).

### a. Corrections Officer Zimmerman

With respect to Officer Zimmerman, Mr. Anton has alleged facts which, if accepted as true, raise a genuine issue of fact about whether he was the victim of excessive force. He claims it was after other corrections officers had arrived in the room where he was being held, and were holding him down and subduing him, that Officer Zimmerman twisted and broke his toe and then twisted it again simply to inflict more pain. If Mr. Anton was already being held down by other officers, there was no need for the application of force to his toe to subdue him at all, and an analysis of the relationship between the need for force and the force used becomes moot. If Mr. Anton was indeed subdued in a room by at least three corrections officers, there was no threat to the safety of staff or inmates. In sum, twisting and breaking Mr. Anton's toe while he was already

fully under the control of other officers could be considered by a jury to be wanton and unnecessary infliction of pain. Although the defendants argue there is no extrinsic evidence that Mr. Anton was injured, he has presented medical records indicating that he sought treatment for his toe after he left the prison, that physicians confirmed it had been fractured, and that he had surgery to remove bone fragments within the toe. Defendants also argue that Mr. Anton's misconduct in reaching for a property box while he was undergoing the strip search necessitated the use of minimal force. Even if this is true, and gaining control over Mr. Anton by pushing him into the wall and restraining his arms was the appropriate response, the breaking of his toe was a use of force separate and apart from that, and was without cause.

Defendants also contend that Officer Zimmerman is entitled to qualified immunity for the actions he took against Mr. Anton. This argument lacks merit. Qualified immunity shields an officer from suit for damages if a reasonable officer could have believed the action in question was lawful, in light of clearly established law and the information that he possessed. Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Under this doctrine, "the right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. In the face of clearly established law, the immunity defense will fail, since a competent officer

should know the contours of the law governing his conduct.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Therefore, Zimmerman would only be entitled to immunity if a reasonable officer in his shoes could have believed that twisting and breaking a subdued prisoner's toe was a lawful action.  Two relevant Eighth Amendment cases, Whitley and Hudson, were both decided long before the conduct occurred in this case, and, from a purely practical standpoint, no corrections officer could reasonably believe that breaking an inmate's bone for no valid purpose is lawful.  Qualified immunity provides no defense for Zimmerman's actions, should a jury find that Mr. Anton's version of events is true.

### b.  Corrections Officer Hetrick

With respect to Officer Hetrick, Mr. Anton has failed to state a claim for excessive use of force.  Even accepting his testimony as true, there is simply an absence of facts supporting a claim that Hetrick's conduct was a malicious or sadistic attempt to cause harm to Mr. Anton.  Anton admitted that he was supposed to follow Hetrick down the hall and that, without being told to, he placed the box of belongings he was carrying on the floor.  Hetrick reacted by "reach[ing] for [his] head like swinging" and touching the back of Mr. Anton's head.  See Anton Dep. 91:13–92:6.  When asked to confirm that Hetrick hit him on the head, Mr. Anton stated that, "Hetrick initiated then I was on the floor[.]" Id. at 92:12–13.  Mr. Anton admits that the incident happened very fast, and nowhere asserts that Hetrick touched, hit, or otherwise inflicted force on him other than whatever

force he used to get Mr. Anton on the ground. Anton admits that Hetrick did not use force on him until he put his box down without being instructed to do so, and admits that no force was used against him by Hetrick after he was on the ground. He claims that it was other Corrections Officers who threw his chest on the ground, then pushed him and hit him. He does not blame Hetrick for this conduct. Therefore, he essentially alleges that Hetrick reacted to him putting his box down by somehow touching Mr. Anton so that he ended up on the floor. Even accepting Mr. Anton's version of events, that is where Hetrick's conduct ended. Anton presents no evidence that injury was inflicted as a result of this use of force, and nowhere disputes that he did not seek medical treatment at the prison or outside of it for any injuries resulting from this incident. According to Anton's version of events, Hetrick used force against him only after he put his box down without instructions; he did not inflict any pain or suffering on Mr. Anton and instead used force only to get him on the floor; and Mr. Anton did not then seek medical attention for any injury resulting from this action. Mr. Anton's story lacks any indication that Hetrick's use of force was malicious or wanton.

Finally, Mr. Anton offers absolutely no argument in support of his claim against Officer Hetrick in his response to the defendants' motion for summary judgment, instead focusing solely on his claims against Officer Zimmerman. In light of the fact that defendants' arguments concerning Officer Hetrick are essentially unopposed, I will grant defendants' motion for summary judgment on Mr. Anton's claims against Hetrick.

### B. Intentional Infliction of Emotional Distress Claims

The defendants seek summary judgment on Count III of Mr. Anton's complaint, which alleges intentional infliction of emotional distress. This count of the complaint was originally directed at all named defendants, so I will assume it is now directed at both Zimmerman and Hetrick.

Intentional infliction of emotional distress is a state law tort claim, and Pennsylvania substantive law governs it. See Cox v. Keystone Carbon Co., 861 F.2d 390, 394 (3d Cir. 1988). Under Pennsylvania law, a plaintiff must show conduct that is of an "extreme or outrageous type," that goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized society." Id. at 395. Pennsylvania law also "requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress." Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989). Because Mr. Anton has presented no evidence, competent or otherwise, that he suffered emotional harm as a result of either Zimmerman's or Hetrick's actions, granting summary judgment in their favor on this count is appropriate. In fact, Mr. Anton has provided no argument in support of this claim in his response to the defendants' motion for summary judgment.

### IV. CONCLUSION

I will grant the defendants' motion for summary judgment on both of Mr. Anton's

claims against Officer Hetrick, and on his intentional infliction of emotional distress claim against Officer Zimmerman. I will deny the motion for summary judgment on Mr. Anton's excessive force claim against Officer Zimmerman, with the expectation that Mr. Anton will file a motion for leave to amend his complaint to assert a cause of action under Section 1983 against Officer Zimmerman for violating the Due Process Clause of the Fourteenth Amendment. No further discovery shall be conducted in this case, as the amendment of the complaint will result only in articulating the correct basis for Mr. Anton's excessive force claim. As discussed above, all relevant discovery has been conducted as to this claim, and the parties have already addressed whether it should stand under relevant law.

    An appropriate order is attached.